IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAITH MORSE, Guardian ad Litem for
S.S., a minor child pseudonym,

                Plaintiff,                        Civ. No. 6:19-cv-1320-MC

           v.                              OPINION AND ORDER

STATE OF OREGON by and through the
DEPARTMENT OF HUMAN SERVICES,
CHILD PROTECTIVE SERVICES DIVISION;
CITY OF MYRTLE CREEK, an Oregon
Municipality; ALEXANDER SALTERIO,
in his official and personal capacity, and the
STATE OF OREGON through the OFFICE OF THE
OREGON ATTORNEY GENERAL;
MICAH PERSONS, in his individual
capacity, and DONALD BROWN,
in his individual capacity,

                Defendants.
_____

MCSHANE, Judge:

      Plaintiff Faith Morse brings this case as Guardian Ad Litem for SLS (a minor child)

regarding sexual abuse suffered by SLS at the hands of her then-guardian, Defendant Alexander

Salterio. Defendants State of Oregon, on behalf of the Department of Human Services ("DHS"),

the Attorney General ("DOJ"), and Micah Persons in his personal capacity, moves for summary

judgment on Plaintiff's claims—negligence, violation of the Fourteenth Amendment, and abuse

of vulnerable person under ORS 124.1000. Defs.' Mot. Summ. J., ECF No. 106. Because a

reasonable trier of fact could find that the harm to SS was foreseeable by Defendant DOJ when it

was investigating the criminal activity of Salterio, the Court DENIES Defendants' motion as it

pertains to the negligence claims against Defendant DOJ. In all other respects, the Motion is GRANTED.

## BACKGROUND

The allegations at issue stem from the sexual abuse of a minor child that was perpetrated by Defendant Alexander Salterio sometime around 2018, when he was the foster parent and then legal guardian of SLS. In September of 2015, Defendant Salterio and his wife applied to DHS to become foster parents. They were approved in January of 2016. Third Am. Compl. ("TAC") at 7. Around March of 2016, DHS placed SLS, who had been a ward of the State, in Defendant Salterio's home. *Id.* Custody for DHS ended in April of 2018, when the court granted guardianship of SLS to the Salterios. Opp'n to Mot. at 6.

In October 2017, Salterio began using a fake Facebook account with the name "Mark Stevens" and portrayed himself as a teen in order to contact female children. Ross Decl., Ex. 1 at 22. In December 2018, the Oregon DOJ Internet Crimes Against Children Taskforce ("ICAC") received two cybertips from the National Center for Missing and Exploited Children ("NCMEC"). *Id.* at 1. The cybertips had been submitted by Facebook, and they indicated that two individuals had uploaded images of a child being used in the display of sexually explicit conduct. *Id.* ICAC investigated the matter and learned that the recipient of the child sexual abuse material was an IP address associated with the City of Myrtle Creek, where Defendant Salterio worked. Ross Dec., Ex. 1 at 5.

On January 7, 2019, ICAC analyst Sara Gollersrud investigated Salterio's Facebook account and viewed photos of Salterio with a "minor female" age 10 or younger. Gollersrud. Dep. 46:10-48:25. On January 10, 2019, ICAC Special Agent ("SA") McCourt downloaded the cybertip images from Facebook and, within the next five days, confirmed Salterio's identity.

Opp'n to Mot. at 6.  Next, SA McCourt served warrants for the Facebook records, and they were obtained from Facebook on February 1, 2019. *Id.*

On February 5, 2019, ICAC Special Agents Todd Gray and Kim Hyde surveilled Salterio's property and prepared the search warrant of the Salterio residence. McCourt Dep. 105:18-25. The next day, ICAC Special Agent Persons contacted Myrtle Creek Police Department Chief Don Brown to inform Chief Brown that the DOJ was prepared to arrest Salterio for sexually exploiting children on the internet. During the conversation, Chief Brown told SA Persons that Salterio resided with a 12-year-old "foster daughter" whom Chief Brown had once met at a barbeque. Persons Dep. 56:2- 59:8. According to Chief Brown, SA Persons concluded the conversation by saying "Don't tell anyone, keep it on the down low," to which Chief Brown agreed. Brown Dep. 127:11-24. Chief Brown told his Sergeants of Salterio's pending arrest so Salterio's work shift could be covered, but he did not tell anyone else. Brown Dep. 150:8-24, 154:14-19

On February 6, 2019, based in part on the information learned from Chief Brown, SA McCourt applied for warrants to search Salterio's person, residence, and vehicles. Ross Decl., Ex. 1 at 7. On February 6, 2019, SA Gray then drafted an operational plan ("OPS Plan") to search the Salterio residence and arrest Salterio at his place of employment. Gray Dep. 51:17:25. The OPS Plan for the Salterio home confirmed that the DOJ expected the Salterio residence to be occupied by a newborn baby, and possibly a 12-year-old foster child. Gray Dep. 63:12-64:5. SA McCourt also believed that Salterio had a 10-year-old adopted daughter living with him, but McCourt did not know the child's name. McCourt Dep. 151:14-24.

Unrelated to the DOJ investigation of Saltiero, on February 7, 2019, DHS Certifier Michelle May Mahorney conducted a mandatory 180-day visit to the Salterio home. This visit

was not related to SLS, but was instead required by DHS for the Saltieros to remain available as a foster placement. During that home visit Certifier Mahorney states that SLS was present but Salterio was not. *Id.* at 97:9-11, 98:12-15. According to Mahorney, the visit was past due. Mahorney Dep. 91:21-93:25, 96:7-13.

On February 8, 2019, DOJ agents arrested Salterio at the police department as he reported for work. Ross Decl., Ex. 2 at 3. Defendant Salterio would later stipulate to sexually abusing SLS on the same morning, prior to being arrested. Ross Decl. Ex. 7, at 4.

On August 7, 2019, Salterio pled guilty to 8 out of 17 counts relating to his online sexual exploitation of female children and his hands-on sexual abuse of SLS. Ross Decl., Ex. 1 at 7–8. In April of 2023, the judgment based on his 2019 plea was vacated and a grand jury was reconvened. Salterio ultimately stipulated to, among other things, two counts of Unlawful Sexual Penetration in the First Degree. On April 12, 2024, the Douglas County Circuit Court entered a criminal judgment against Salterio. *See* Ross Decl., Ex. 4

Plaintiff then brought this civil action, alleging that DHS, the DOJ, Chief Brown, and Myrtle Creek were all liable for actions that led to the sexual abuse of SLS. TAC at 13-29. As noted, DHS, DOJ, and Defendant Persons move for summary judgment, asking the court the resolve the negligence and Fourteenth Amendment claims as a matter of law.

## **STANDARD**

"Federal Rule of Civil Procedure 56(a) expressly permits a party to move for summary judgment on a claim or defense." *E.E.O.C. v. Fred Meyer Stores Inc.*, 954 F. Supp. 2d 1104, 1112 (D. Or. 2013) (internal quotations and emphasis in original omitted). This Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is

"genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.*

The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at 252. Uncorroborated allegations and "self-serving testimony" are also insufficient. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## DISCUSSION

Defendants DOJ, DHS, and Persons move for summary judgment on Plaintiff's claims relating to negligence, negligence per se, the Fourteenth Amendment, and the state law claim for abuse of a vulnerable person. For the following reasons, the motion is denied on the negligence claims against the DOJ and granted on all other claims.

## I.    Negligence Claims Against the Oregon Department of Justice.

Plaintiff brings common-law negligence and negligence per se claims against DOJ for failing to notify DHS and Salterio's wife when DOJ knew or should have known the danger posed by Salterio, and for failing to adequately pursue and investigate the threat. TAC at 20. Plaintiff also brings negligence per se claims against DOJ for alleged violations of Oregon's

mandatory reporting laws. *Id*. at 21. The Court finds that there is a genuine issue of material fact that precludes summary judgment on the negligence claims against DOJ.

### a. Defendant DOJ Is Not Exempted from Mandatory Reporting Laws.

At issue initially is whether Oregon's mandatory "cross-reporting" law applies to the Defendant DOJ. Under Oregon law, "Any public or private official having reasonable cause to believe that any child with whom the official comes in contact has suffered abuse or that any person with whom the official comes in contact has abused a child shall immediately report or cause a report to be made in the manner required in ORS 419B.015." ORS 419B.010(1). DOJ argues that it was not subject to the mandatory reporting law because ORS 419B.020 compels "law enforcement agenc[ies] to report, and the ICAC unit does not meet the definition of "law enforcement agency" under the statute. ORS 419B.005(5). But Defendant ignores that the statute still applies on an individual level to "public or private official[s]." ORS 419B.010. "Public or private official" is defined to include "peace officer," which would include DOJ ICAC officers. Indeed, as described by the officers themselves, the DOJ "is a unique police department" comprised of "police officers whose primary role is to investigate crimes all over the state." Gray Dep. 65:20-25.

DOJ also argues that there was no requirement for the officers to cross report because the statute supplies an exemption to covered reporters where "the context requires otherwise." ORS 419B.005. While it may be true that the specific context provided reasons for Persons not to report mere days prior to the arrest of Salterio, it is less clear that exigent circumstances existed when ICAC first learned of Salterio's behavior, knowing he had minors in his custody nearly a month prior to the arrest. The Court concludes that the ICAC does not have a blanket exemption under Oregon's cross-reporting reporting law, and that there is at least a question of fact as to

whether DOJ was compelled to report when officers learned of the Salterio's proximity to minors in January 2019.

### b. Negligence and Negligence Per Se

The question then turns to whether a reasonable juror could find that DOJ was liable under either a negligence or negligence per se standard. Under Oregon law, the general rule is that there is not liability for intervening acts of a third party. *Buchler v. Oregon Corrections Div.*, 316 Or 499, 511 (1993). Liability does attach, however, where there is a "special relationship" between the plaintiff victim and the third-party defendant. *Fazzolari v. Portland School Dist. No. JJ*, 303 Or 1, 19 (1987). Even if there is no special relationship, "*Fazzolari* 's general foreseeability principle . . . comes into play." *Buchler*, 316 Or at 505, n5. Indeed, in Oregon, the "intervening criminal acts of a third person do not necessarily" preclude liability in the absence of a special relationship. *Fraker v. Benton County Sheriff's Office*, 214 Or.App. 473, 490 *adh'd to on recons*, 217 Or.App. 159, (2007). While "the nature and scope of the duty owed by the defendant to the plaintiff can be created, defined, or limited based on, among other things, the relationship between or status of the parties," a claim of negligence is otherwise governed by a foreseeability analysis: "whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest of the kind that the plaintiff suffered." *Piazza v. Kellim*, 360 Or. 58, 71 (2016). In *Buchwalter-Drumm v. State*, which involved foster child abuse, the court concluded that "a lack of a special relationship between the state and plaintiff at the time of the abuse does not preclude a determination that the state is liable for the harm that [the abuser's] criminal conduct caused to plaintiff." 288 Or. App. 64, 82 (2017).

Here, a reasonable juror could find that Defendant DOJ was negligent by failing to uphold its requisite standard of care. Nearly two months prior to the arrest and the documented

sexual abuse of SLS, the ICAC unit within DOJ received cybertips reporting that two individuals had uploaded images of a child being used in the display of sexually explicit conduct. *Id.* The ICAC unit would investigate and learn that the material was associated an IP address associated with the City of Myrtle Creek, where Salterio worked. Ross Decl., Ex. 1 at 5. On January 7, 2019, more than one month before Salterio's arrest, DOJ ICAC analyst Sara Gollersrud viewed photos of Salterio with a "minor female" age 10 or younger. Gollersrud Dep. 46:10-48:25. On January 10, 2019, DOJ ICAC SA McCourt downloaded the images from the cybertips from Facebook; within the next five days SA McCourt confirmed Salterio's identity. Ross Decl., Ex. 1 at 5. At this point—nearly one month prior to the arrest—the ICAC unit had identified Salterio as the person who had downloaded the images from the cybertips. They also had learned that he had photos with minor children on his Facebook page, suggesting that he lived with them or at least had physical contact with such minors.  It was nearly one month later that Salterio sexually abused SLS.

        In the intervening month, a factfinder could conclude that DOJ should have foreseeably anticipated harm to the child in the home and should have taken a greater care to prevent it. Had DOJ called the hotline and notified DHS that there was reasonable suspicion of child abuse, this may have caused DHS to act swiftly and with more scrutiny when visiting the home. DOJ asserted at oral argument that knowledge of potential sexual abuse would not have made a difference, given that DHS visited the home the day prior the sexual abuse. Yet this ignores that the visit may have looked quite different—and indeed may have occurred earlier—had DHS been aware of the child pornography and potential sexual abuse in the home. When DHS visited the day prior to the sexual abuse, Salterio was not even present. DOJ also did not notify Defendant's spouse in the time leading up to the arrest. Here, too, events may have transpired

differently had Salterio's spouse known in January that her husband potentially represented an immediate threat to SLS given his known engagement with child pornography.

As it relates to the negligence per se claim, there also remains a question of fact for a jury. As noted above, ICAC is not immune from the mandatory reporting statute. The critical question as to whether it compelled them to report is when DOJ had "reasonable cause" to believe that the Salterio was abusing the child. A factfinder could conclude that the law applied at some point weeks, or even months, prior the sexual abuse. Due to these open questions of fact, the Court is not prepared to the resolve the negligence per se claim as a matter of law. Together, the Court denies the motion for summary judgment on the negligence and negligence per se claims against DOJ.

## II.    Negligence Claims Against DHS.

Defendant DHS succeeds in its motion for summary judgment on the negligence claims. Plaintiff argues that multiple decisions made by DHS in the years prior to the sexual assault make the department liable. Plaintiff first argues that there is a question of fact as to whether the child abuse occurred prior to DHS relinquishing custody on April 3, 2018, potentially giving rise to liability. Though the digital penetration occurred in May of 2018, after custody of SLS was transferred from DHS to a court guardianship, Plaintiff relies on grand jury testimony from SLS, who stated that Salterio's grooming behavior progressed over time from "complimentary behavior, through benign contact, to sexual contact, and then to digital penetration of S.L.S.' vagina." Ross Decl., Ex. 3 at 2-3.  Plaintiff then infers that abusive behavior could have occurred prior to DHS relinquishing custody, when DHS still had a special relationship with SLS. The claim therefore is that DHS was negligent by failing to make face-to-face home visits during

2017 and early 2018. Plaintiff asserts that there is no documentation of these visits, thus arguing that they may not have happened.

Plaintiff reaches too far with this argument. The only evidence suggesting that abuse occurred prior to the custody being transferred is the declaration from Mr. Ross, Plaintiff's attorney, stating that the victim described in a grand jury hearing on May 23, 2023, that Salterio's behavior followed a progression from "complimentary behavior, through benign contact, to sexual contact, and then to digital penetration of S.L.S.' vagina." The declaration presents no evidence to substantiate this, nor does it provide any direct quotes from SLS. Without further evidence, no reasonable juror could conclude that the sexual misconduct occurred prior to April 3, 2018, and that there was a special relationship giving rise to liability for intervening third-part criminal conduct.

Plaintiff also argues that, even if the abuse occurred after DHS placed SLS in the Salterio's foster home, there still existed a special relationship between the Defendant DHS and the child. Here, Plaintiff argues that "Salterio remained a certified resource family and a 'resource parent,'" which required that DHS provide ongoing training and visits. Under Or. Admin. Rule 413-200-0283 and ORS 418.640(4), DHS was to visit the home of the Salterios every 180 days. Yet this ongoing monitoring and training is distinct from a visit involving a child in DHS custody. Indeed, on April 3, 2018, in the order granting the guardianship the Salterios, the court expressly states, "The ward should no longer be in the legal custody or DHS but should continue to be a ward of this Court." Defs.' Mot. for Summ. J. at 5. Accordingly, these post-custody visits do not supply grounds for a special relationship between DHS and Plaintiff for the purposes of the intervening criminal act. The purpose of these visits was merely to maintain the certification of the home for potential foster children in the future.

But as described above, even without a special relationship, the Court still undertakes an analysis of general foreseeability. A "defendant may be found liable if it was reasonably foreseeable to defendant that plaintiff would suffer harm because of those criminal acts and if defendant unreasonably created the risk of the harm that befell plaintiff." *See McPherson v. State*, 210 Or. App. 602, 613 (2007). Even if there was no special relationship, Plaintiff asserts that DHS' conduct created a foreseeable risk of sexual abuse by (1) failing to properly screen Salterio as a foster parent by failing to enquire about his proclivity to view pornography or investigate why he was terminated by RPD; and (2) failing to have the mandated meetings with Salterio and SLS—both pre-and post-custody.

Plaintiff's specific contention is that there was a foreseeable risk created when DHS failed to interrogate Salterio about his proclivity to view pornography. Indeed, during his screening process to become a foster parent, Salterio admitted to viewing adult pornography in the past. Plaintiff is asking the court to infer, as a matter of law, that further questioning on this subject would have resulted in the discovery that Salterio engaged in the sexual exploitation of children. Yet engaging with adult pornography is neither uncommon nor illegal, and it seems unlikely to the Court that furthering questioning about Salterio's proclivities would have uncovered his interest in child pornography. Plaintiff also uses similar line of reasoning to suggest that DHS created the foreseeable risk because it did not investigate why Salterio was terminated by the Roseburg Police Department before being hired by the Myrtle Creek Police Department. Here again, the argument is too attenuated, particularly because there are no facts to suggest that the termination had anything to do with sexual abuse or child pornography.

The court also finds that DHS' alleged failures to properly conduct meetings did not create a foreseeable risk of harm that could rise to the level of negligence. While there may have

been an occasional missed visit, there are insufficient facts to support a conclusion that risks were foreseeable. The Salterios were foster parents to multiple children, and they were initially certified in January of 2016, a few months before Plaintiff was placed in the home. The Salterios were again certified in November of 2017 for another two-year period, and certified once more when they moved to Myrtle Creek in 2018. Lampson Decl, Ex. C. There is an extensive review process for the potential guardianship of a foster child, which was undertaken here. This process of review includes a Citizen Review Broad that evaluates information submitted about the child and prospective guardianship family. This review board made its finding and recommendation in February of 2018, based on copious reports of the family between 2016 and 2018. *Id.* By all accounts, these reports indicated that the children were safe and thriving in the home, with no indication of emotional or physical abuse. *Id.* The report from the review board notes that there was missing documentation from October of 2017 and acknowledges that visits did not always strictly adhere to DHS policy. *Id.* Yet the review board, and ultimately the guardianship judge, still granted the guardianship. Here, the Court similarly finds that a reasonable juror would not conclude that these deficiencies, when taken in context, created grounds for foreseeability of the type of sexual abuse that occurred.

### III.    Claim for Abuse of a Vulnerable Person Against DHS.

Defendant DHS also moves to dismiss the claim for abuse of a vulnerable person under ORS 124.100. Under the statute, an action may be brought "for permitting another person to engage in physical or financial abuse if the person knowingly acts or fails to act under circumstances in which a reasonable person should have known of the physical or financial abuse." ORS 124.100(5). Plaintiff argues that DHS is liable under the statute because it allowed SLS to reside with Salterio, who had informed DHS he at some time consumed pornography.

Further, Defendant DHS failed to have sufficient face-to-face visits prior to the Court granting the Salterio's guardianship while the abuse occurred." TAC at 30. But for the same reasons that Plaintiff's negligence claims against DHS do not survive, the Court grants summary judgment to defendant under Oregon's abuse of a vulnerable person statute.

### IV.    <u>Section 1983 Claims.</u>

Plaintiff also brings two claims against the state Defendants under 42 U.S.C. § 1983, alleging violation of her rights under the Fourteenth Amendment. She alleges that Defendant DOJ violated due process and equal protection clauses by failing to take any steps to remove SLS from the home, contact DHS, or otherwise protect SLS from Salterio after learning SLS was residing with Defendant Salterio. TAC at 26. She also brings a claim against Special Agent Micah Persons in his personal capacity, alleging a violation of her fundamental right to bodily autonomy under the Fourteenth Amendment's substantive due process clause. *Id.* at 28. Here, Plaintiff's claims against both the state and Persons fail as a matter of law.

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To bring such a claim, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, because the State itself is not a "person" for the purposes of Section 1983, Plaintiff's claim against Defendant DOJ does not survive. *Will v Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a

State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.").

Plaintiff, however, may bring a claim against Persons in his individual capacity, though here it is barred on other grounds. To establish personal liability in a Section 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Acting under state law requires that a person "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir. 1991) (*quoting West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988)). "[I]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state." *Id.*

The Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment protects individuals from arbitrary government action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Courts have recognized certain fundamental rights as implied within the concept of Fourteenth Amendment due process. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Among these are the right to bodily autonomy, including the right to be free from physical injury, bodily restraint, and bodily intrusions. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *Wood v. Ostrander*, 879 F.2d 583, 586, 589 (9th Cir. 1989).

In a Section 1983 claim against an individual acting under the color of state law, "the general rule is that [a] state is not liable for its omissions." *Patel v. Kent School District*, 648 F.3d 965, 971 (9th Cir. 2011). "[T]he Fourteenth Amendment's Due Process Clause generally

does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests." *Id.* Thus, the Fourteenth Amendment generally "does not impose a duty on [the state] to protect individuals from third parties.'" *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir.2007). There are two exceptions to this rule: first, for failing to protect the plaintiff when there is a "special relationship" between them; and second, if the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012); *Patel*, 648 F.3d at 971-72. Where this "state created danger" exception applies, the affirmative act must create an actual, particularized, danger. *Kennedy*, 439 F.3d at 1061.

Plaintiff argues that Defendant Persons created a danger by his actions in the days before the arrest of Salterio on February 8, 2019. Opp'n Mot. at 29. Specifically, Plaintiff argues that Persons, on February 6, 2019, believed SLS was a foster child residing with Salterio and at the time had probable cause to arrest Salterio. *Id.* Plaintiff contends that Persons was aware there was a direct correlation between individuals who viewed child pornography and those who sexually abused children. *Id.* Despite being a mandatory reporter, Plaintiff argues that Persons took the affirmative act of informing Chief Donald Brown to not tell anyone that Salterio was sexually exploiting children. *Id.* Persons may also have given those instructions to SAs Hyde, Gray, and McCourt,

Yet the facts demonstrate that Defendant Persons acted swiftly when he learned from Chief Brown on February 6, 2019, that Salterio had a foster child. The only affirmative step that Persons took to arguably create a danger was to tell Chief Brown not to notify anyone about the impending arrest. Here he had eminent reason to do so: the arrest was going to occur first thing on February 8, 2019, and Persons did not want to disturb its execution. As for the requirement of

mandatory reporting, this is the sort of "context" that the statute contemplates. Unlike the requirement that Defendant DOJ may have had to report in early January when they learned of the possible presence of the child in the home, there is a stronger basis here for asking Chief Brown not to report—again, to protect the execution of the arrest that was to occur in fewer than two days, to avoid the destruction of evidence, and to avoid a police standoff that could result in harm to the child.

As for whether Persons should have acted prior to learning from Chief Brown that there was a foster child in the home, there are inadequate facts to show a state-created danger. For one, it is not alleged that Persons was aware of the photos with the minor that ICAC analyst Sara Gollersrud reviewed on January 7, 2019. *See* Opp'n to Mot. And even if he were aware, neglecting to cross report in that instance would neither constitute an affirmative act that places SLS in danger, nor a deliberate indifference to that danger. Numerous courts, when examining state-created danger as it relates to protection of children, have found that state is not liable in instances where there is far greater danger than we have here. *See, e.g., Pierce v. Delta County Department of Social Services*, 119 F.Supp.2d 1139 (D. Co. 2000) (finding that failure to comply with mandatory reporting and investigation provisions did not give rise to a state-created danger); *Estate of Pond v. Oregon*, 322 F.Supp.2d 1161 (D. Or. 2004) (holding that the state's failure to protect a child does not trigger the danger-creation exception, unless affirmative steps were taken to increase the danger); *Forrester v. Bass*, 397 F.3d 1047 (8th Cir. 2005) (concluding that that the failure to investigate a report of child abuse, as required by law, and failing to remove a child from an abusive family situation, does not constitute state created danger). Because Persons' actions did not constitute affirmative conduct to place SLS in danger or a

deliberate indifference to that danger, the Court finds that Persons motion prevails as a matter of law.

V.    **Qualified Immunity**

Defendant Person's motion on grounds of qualified immunity also prevails. Government officials are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (*quoting White* v. *Pauly*, 580 U. S. 73, 78–79 (2017)). For a court to deem a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here there was not a clearly established right that Persons would have known at the time of the alleged violation. Plaintiff argues not that legal precedent has clearly established the right at issue, but that the established right exists because Oregon law "provides the basis for the cause of action sued upon." Opp'n Mot. at 31 (citing *Davis v. Scherer*, 468 U.S. 183, 194 n.12, (1984)). Specifically, the argument is that Oregon's mandatory report law created a liberty interest for SLS to be "free from exposure to the risk of sexual abuse after Persons had reasonable cause to believe Salterio was sexually exploiting children." *Id.* at 32. This reasoning, however, draws a tenuous connection to a clearly established right, even if the Court were to find that Persons violated his duty as a mandatory reporter. The Supreme Court binds this Court to a high standard on qualified immunity. It exists to allow officers wide latitude in conducting their duties—a "demanding standard [that] reflects the long-standing principle that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Est. of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir. 2024). The Court finds, as a

matter of law, that Persons' conduct did not violate a clearly established right and that his conduct is therefore protected under qualified immunity.

### **<u>CONCLUSION</u>**

Defendants' Motion for Summary Judgment (ECF No. 106) is GRANTED in part and DENIED in part. The motion challenging claims of negligence and negligence per se against DOJ are denied. The motion is granted with regard to all other claims.


IT IS SO ORDERED.

DATED this 29th day of August, 2024.


       /s/ Michael J. McShane       
Michael McShane
United States District Judge