IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAITH MORSE, Guardian ad Litem for
S.S., a minor child pseudonym,

       Plaintiff,

  v.

STATE OF OREGON by and through the
DEPARTMENT OF HUMAN SERVICES,
CHILD PROTECTIVE SERVICES DIVISION;
CITY OF MYRTLE CREEK, an Oregon
Municipality; ALEXANDER SALTERIO,
in his official and personal capacity, and the
STATE OF OREGON through the OFFICE OF THE
OREGON ATTORNEY GENERAL;
MICAH PERSONS, in his individual
capacity, and DONALD BROWN,
in his individual capacity,

       Defendants.

Civ. No. 6:19-cv-1320-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Faith Morse brings this case as Guardian Ad Litem for SLS (a minor child) who was sexually abused by her then-guardian, Defendant Salterio. Defendant Myrtle Creek moves for summary judgment on Plaintiff's Negligence and Fourteenth Amendment claims. Defs.' Mot. Summ. J., ECF No. 104. For the following reasons, Defendants' motion is granted.

## BACKGROUND

The Plaintiff's claims against Myrtle Creek stem from the sexual abuse of SLS in approximately 2018 by her legal guardian, Defendant Alexander Salterio. In September of 2015, Salterio and his wife applied with the Department of Human Services (DHS) to become foster

1 – OPINION AND ORDER

parents. They were approved in January of 2016. Third Am. Compl. ("TAC") at 7. Around March of 2016, DHS placed SLS, who had been a ward of the State, in the Salterio home. *Id.*

When Salterio was arrested in February of 2019, he was employed as a police officer at the City of Myrtle Creek. Defs.' Mot. Summ. J. at 3. At the time, Donald Brown was the Chief of Police for the City of Myrtle Creek. *Id.* Salterio was hired on August 1, 2017. *Id.* During the hiring process, Chief Brown was aware that Salterio had worked for the Roseburg Police Department (RPD) on a temporary basis. *Id.* Chief Brown contacted the RPD while assessing Salterio's application for the position. *Id.* Chief Brown inquired about Salterio's termination at RPD and learned that Salterio had difficulty completing reports and staying current with call volume. *Id.*

On February 6, 2019, Chief Brown received a call from the Oregon DOJ Internet Crimes Against Children Taskforce ("ICAC"). He was informed that Salterio was being investigated and that the Oregon State Police intended to arrest him. Defs.' Mot. Summ. J. at 3-4.  At this point, Chief Brown knew that Salterio was certified as a foster parent and that he had a young girl in his care, whom he had once met at a department summer barbecue. *Id.* at 3. Brown was told that the State Police intended to arrest Salterio at this work on February 8, 2019. *Id.* at 4. The ICAC unit instructed Brown not to share the information related to the impending arrest with anyone. *Id.* On the morning of February 8, 2019, investigators arrived at the Myrtle Creek Police Department as planned and arrested Salterio when he arrived at work. *Id.*

On August 7, 2019, Salterio pled guilty to numerous counts related to his online sexual exploitation of female children and his hands-on sexual abuse of SLS. The judgement associated with his guilty plea was ultimately vacated and a new indictment was issued against Salterio. In April of 2023 Salterio stipulated to, among other things, two counts of Unlawful Sexual

2 – OPINION AND ORDER

Penetration in the First Degree. Furr Decl., Ex. 7. The Douglas County Circuit Court entered a criminal judgment against Salterio on April 12, 2024. *Id.*

Plaintiff then brought this civil suit, alleging that DHS, the DOJ, Chief Donald Brown, and Myrtle Creek were all liable for actions that led to the sexual abuse of SLS. TAC at 13-29. In this motion at hand, Myrtle Creek moves for summary judgment, asking the court the resolve the negligence and Fourteenth Amendment claims as a matter of law.

## STANDARD

"Federal Rule of Civil Procedure 56(a) expressly permits a party to move for summary judgment on a claim or defense." *E.E.O.C. v. Fred Meyer Stores Inc.*, 954 F. Supp. 2d 1104, 1112 (D. Or. 2013) (internal quotations and emphasis in original omitted). This Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.*

The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at

252. Uncorroborated allegations and "self-serving testimony" are also insufficient. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## DISCUSSION

Defendant Myrtle Creek moves for summary judgment on Plaintiff's claims under the Fourteenth Amendment. For the following reasons, the motion is granted.

**I.      Section 1983 Claims.**

Plaintiff alleges that Myrtle Creek is liable under the Fourteenth Amendment right to bodily integrity for enabling and failing to report Salterio's conduct. TAC at 21-22, 27-28. Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To bring such a claim, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Acting under state law requires that a person "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir. 1991) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988)). "[I]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state." *Id.*

"Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to a municipal policy, practice, or custom." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (*citing Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-91 (1978). A Monell claim requires a showing that (1) the plaintiff was deprived of a

constitutional right; (2) the municipality had a policy, longstanding practice, or custom; (3) the policy, practice, or custom demonstrated deliberate indifference to the right at issues; and (4) the policy, practice, or custom was the cause behind the violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

The Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment protects individuals from arbitrary government action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Courts have recognized certain fundamental rights as implied within the concept of Fourteenth Amendment due process. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Among these are the right to bodily autonomy, including the right to be free from physical injury, bodily restraint, and bodily intrusions. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *Wood v. Ostrander*, 879 F.2d 583, 586, 589 (9th Cir. 1989).

In a Section 1983 claims, "the general rule is that [a] state is not liable for its omissions." *Patel v. Kent School District*, 648 F.3d 965, 971 (9th Cir. 2011). "[T]he Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests." *Id.* Thus, the Fourteenth Amendment generally "does not impose a duty on [the state] to protect individuals from third parties.'" *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir.2007). There are two exceptions to this rule: first, for failing to protect the plaintiff when there is a "special relationship" between them; and second, if the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012); *Patel*, 648 F.3d at 971-72. Where this

"state created danger" exception applies, the affirmative act must create an actual, particularized, danger. *Kennedy*, 439 F.3d at 1061.

Plaintiff asserts that Myrtle Creek "carried out a policy of affirmatively instructing his officers to disregard their cross-reporting obligations, which placed SLS in danger." Opp'n Mot. at 29. Plaintiff's argument centers on the conduct of Chief Brown. The allegation is that he created a danger by failing to "cross report" pursuant to Oregon's mandatory reporting statute (ORS 419B.005) and otherwise take action on February 6, 2019, when Special Agent Persons notified him that DOJ suspected Salterio of sex crimes. Because Chief Brown knew that SLS was a foster child of Salterio's, Plaintiff argues that Chief Brown is liable for not cross reporting and otherwise taking mitigating action immediately.

Yet Chief Brown was explicitly told not to share this information to facilitate the arrest of Salterio, which was set to occur in fewer than two days from the time of his notification. Such an omission—if it could be characterized as that—is not the sort of affirmative conduct that gives rise to a state-created danger. And it does not represent deliberate indifference to the danger at stake. In fact quite the opposite: Chief Brown was complying with the dictates of the ICAC unit to ensure that law enforcement was swift and effective. Numerous courts, when examining state-created danger as it relates to protection of children, have found that state is not liable in instances where there is far greater danger than we have here. *See, e.g., Pierce v. Delta County Department of Social Services*, 119 F.Supp.2d 1139 (D. Co. 2000) (finding that failure to comply with mandatory reporting and investigation provisions did not give rise to a state-created danger); *Estate of Pond v. Oregon*, 322 F.Supp.2d 1161 (D. Or. 2004) (holding that the state's failure to protect a child does not trigger the danger-creation exception, unless affirmative steps were taken to increase the danger); *Forrester v. Bass*, 397 F.3d 1047 (8th Cir. 2005) (concluding

that that the failure to investigate a report of child abuse, as required by law, and failing to remove a child from an abusive family situation, does not constitute state created danger).

As it relates to the Monell claim, Plaintiff's argument is that Chief Brown, by failing to notify other officers in the department, was "creating and maintaining policies on behalf of the police department" and acting with "deliberate indifference to the foreseeable risks to S.L.S. Brown." Opp'n to Mot. at 24. But for the reasons stated above, Chief Brown's conduct did not constitute affirmative conduct and deliberate indifference to a known danger. It therefore cannot be grounds for Monell liability against Defendant Myrtle Creek. Myrtle Creek's motion on the Monell claim therefore prevails as a matter of law.

## II.     Negligence Claims Against Myrtle Creek

Plaintiff brings common-law negligence and negligence per se claims against Myrtle Creek for failure to report under Oregon's mandatory child abuse reporting laws, and for negligent hiring, training, and supervision of Salterio. Opp'n to Mot. at 28.

Under Oregon tort law, the general rule is that there is no liability for intervening acts of a third party. *Buchler v. Oregon Corrections Div.*, 316 Or 499, 511 (1993). Liability does attach, however, where there is a "special relationship" between the plaintiff victim and the third-party defendant. *Fazzolari v. Portland School Dist. No. JJ*, 303 Or 1, 19 (1987). Even if there is no special relationship, "*Fazzolari* 's general foreseeability principle . . . comes into play." *Buchler*, 316 Or at 505, n5. Indeed, in Oregon, the "intervening criminal acts of a third person do not necessarily" preclude liability in the absence of a special relationship. *Fraker v. Benton County Sheriff's Office*, 214 Or.App. 473, 490 *adh'd to on recons*, 217 Or.App. 159, (2007). While "the nature and scope of the duty owed by the defendant to the plaintiff can be created, defined, or limited based on, among other things, the relationship between or status of the parties," a claim

of negligence is otherwise governed by a foreseeability analysis: "whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest of the kind that the plaintiff suffered." *Piazza v. Kellim*, 360 Or. 58, 71 (2016). In *Buchwalter-Drumm v. State*, which involved foster child abuse, the court concluded that "a lack of a special relationship between the state and plaintiff at the time of the abuse does not preclude a determination that the state is liable for the harm that [the abuser's] criminal conduct caused to plaintiff." 288 Or. App. 64, 82 (2017).

      Here, the actions of Myrtle Creek do not satisfy either prong. With respect to a special relationship, the argument is that Myrtle Creek relied on Salterio's status as a foster parent in hiring him, and that Myrtle Creek helped Salterio maintain his foster certification and guardianship of SLS, because Salterio's employment with the department lent Salterio credibility. Plaintiff further alleges that that Myrtle Creek created a special relationship with SLS because Salterio was able to use the "trust and confidence granted to him by Myrtle Creek Police Department" to sexually exploit children. Plaintiff cites to the fact that Salterio told SLS he could get away with abuse because he is a police officer. TAC at 16. Plaintiff also contends that Salterio's use of the department's internet and computers to sexually exploit children also gave rise to a special relationship. *Id.*

      None of these facts point to the kind of special relationship that provides for an exception to the general rule of nonliability for omissions. Here, there are no facts establishing the type of custodial relationship between Myrtle Creek and SLS that would give rise to the special relationship exception. As stated above, Plaintiff offers a litany of facts attempting to assign culpability to Chief Brown, but the reality remains that this was a child in the care of one of the

employees in the police department, whom Chief Brown happened to meet just once. There was no special relationship.

Next, Plaintiff argues that Myrtle Creek's actions amounted to negligence because the actions of Chief Brown and the Department created a foreseeable danger. Plaintiff argues that Myrtle Creek had a "history with officers committing sexual crimes against children, including a former police Chief who was convicted of possessing child pornography." Opp'n to Mot. at 30. Plaintiff argues that Myrtle Creek's failure to cross report and otherwise take action on February 6, 2019, created the foreseeable danger. But for similar reasons that these actions did not constitute a state-created danger, those actions did not amount to a foreseeable danger upon which Myrtle Creek should have acted. Once again, Chief Brown was explicitly told not to share this information to allow the arrest to occur less than two days later. This is not behavior that was unreasonable under the circumstances or that created a foreseeable danger rising to the level of liability.

As it relates to the negligence per se claim, Plaintiff claims that Myrtle Creek is liable for negligence per se because it did not "conduct the required background check of Salterio and only checked for convictions and ran his driving record through the Department of Motor Vehicle Data Base." Opp'n to Mot. at 32. In a negligence per se claim, Plaintiff must show that "(1) defendants violated a statute; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the statute; and (4) that the injury plaintiff suffered is of a type that the statute was enacted to prevent." *McAlpine v. Multnomah County*, 131 Ore. App. 136, 144, 883 P2d 869 (1994). Plaintiff argues that Myrtle Creek failed to conduct the fully expansive background check set forth in OAR 295-008-0015, thereby creating per se liability. Opp'n to Mot. at 32. Specifically, Plaintiff argues that Myrtle

Creek would have discovered that Salterio had previously viewed pornography and therefore would not have hired him. Yet engaging with adult pornography is neither uncommon nor illegal. There is no logical nexus between the random viewing of pornography in the past and a foreseeable sexual harm to a child in the future. Indeed, there are insufficient facts for a reasonable factfinder to conclude that violation of that rule is what caused SLS to suffer sexual abuse. The Court therefore finds for Myrtle Creek on the negligence per se claim.

## CONCLUSION

Defendant, City of Myrtle Creek's Motion for Summary Judgment, ECF No. 104, is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of August, 2024.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

10 – OPINION AND ORDER