IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAITH MORSE, Guardian ad Litem for
S.S., a minor child pseudonym,

       Plaintiff,                                    Civ. No. 6:19-cv-1320-MC

      v.                                         OPINION AND ORDER

STATE OF OREGON by and through the
DEPARTMENT OF HUMAN SERVICES,
CHILD PROTECTIVE SERVICES DIVISION;
CITY OF MYRTLE CREEK, an Oregon
Municipality; ALEXANDER SALTERIO,
in his official and personal capacity, and the
STATE OF OREGON through the OFFICE OF THE
OREGON ATTORNEY GENERAL;
MICAH PERSONS, in his individual
capacity, and DONALD BROWN,
in his individual capacity,

       Defendants.
_____

MCSHANE, Judge:

      Plaintiff Faith Morse brings this case as Guardian Ad Litem for SLS (a minor child) who was sexually abused by her then-guardian, Defendant Salterio. Defendant Chief Brown moves for summary judgment on Plaintiff's Fourteenth Amendment claims. Defs.' Mot. Summ. J., ECF No. 101. Because Defendant Brown cannot be held liable for the harm perpetrated by Defendant Salterio, and because he is entitled to qualified immunity, Defendant Brown's motion for summary judgment is GRANTED.

1 – OPINION AND ORDER

## BACKGROUND

The allegations at issue surround the sexual abuse of a minor that was perpetrated by Defendant Alexander Salterio when he was the foster parent and then legal guardian of SLS. In September 2015, Defendant and his wife applied to DHS to become foster parents, and they were approved in January 2016. Third Am. Compl. ("TAC") at 7. Around March 2016, DHS placed SLS in Defendant Salterio's home as a foster child. *Id.* Eventually, the Salterios became her legal guardians. *Id.*

In late 2018, the Oregon DOJ Internet Crimes Against Children Taskforce ("ICAC") received two cybertips from the National Center for Missing and Exploited Children ("NCMEC") about a Facebook account that had been flagged based on its online interactions with a 13-year-old child. Murphy Decl., Ex. 3 at 7. ICAC investigated the matter and learned that the recipient of the child sexual abuse material was an IP address associated with the City of Myrtle Creek, where Defendant Salterio worked as a police officer. Murphy Decl. Ex. 2 at 6.

On February 6, ICAC Special Agent Persons contacted Myrtle Creek Police Department Chief Donald Brown to notify him that ICAC was investigating Salterio and would be serving a search warrant at Salterio's residence. Murphy Decl. Ex. 1 at 9–10. Persons notified Chief Brown that the investigation concerned internet crimes against children and that that some of the internet activity had occurred in the police department itself. Murphy Decl. Ex. 1 at 13, Ex. 2 at 12–13. Chief Brown was aware that Salterio had a foster child, and he had previously met her at a department summer barbecue some years before. Chief Brown Decl. at 4; Murphy Decl. Ex. 1 at 20. On the call, Persons informed Chief Brown that ICAC intended to arrest Salterio when Salterio arrived for his work shift on February 8. Murphy Decl. Ex. 1 at 20, Ex. 2 at 17. Persons asked Chief Brown not to inform anyone about the impending arrest. Salterio was arrested when

2 – OPINION AND ORDER

he arrived at work on the morning of February 8. Murphy Decl. Ex. 1 at 18. Just before Salterio left for work that morning, Salterio sexually abused SLS at the family home. *Id.*

On August 7, 2019, Salterio pled guilty to 8 out of 17 counts related to his online sexual exploitation of female children and his hands-on sexual abuse of SLS. Furr Decl., Ex. 1 at 7. In April of 2023, after the original judgment was vacated and a a new indictment was filed, Salterio stipulated to, among other things, two counts of Unlawful Sexual Penetration in the First Degree. Furr Decl., Ex. 7. The Douglas County Circuit Court entered a criminal judgment against Salterio on April 12, 2024. *Id.*

Plaintiff then brought this civil action, alleging that DHS, the DOJ, Chief Donald Brown, and Myrtle Creek were all liable for actions that led to the sexual abuse of SLS. TAC at 13-29. In this motion at hand, Chief Brown moves for summary judgment, asking the court the resolve the Fourteenth Amendment claims as a matter of law.

## **STANDARD**

"Federal Rule of Civil Procedure 56(a) expressly permits a party to move for summary judgment on a claim or defense." *E.E.O.C. v. Fred Meyer Stores Inc.*, 954 F. Supp. 2d 1104, 1112 (D. Or. 2013) (internal quotations and emphasis in original omitted). This Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.*

The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting

*Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at 252. Uncorroborated allegations and "self-serving testimony" are also insufficient. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## DISCUSSION

Defendant Brown moves for summary judgment on Plaintiff's claims under the Fourteenth Amendment. For the following reasons, the motion is granted.

I.     **Section 1983 Claims**

Plaintiff claims under 42 U.S.C. § 1983 that Chief Brown violated her Fourteenth Amendment right to bodily integrity by enabling and failing to report Salterio's conduct. TAC at 21-22, 27-28. Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To bring such a claim, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Acting under state law requires that a person "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir. 1991) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988)). "[I]t is firmly

4 – OPINION AND ORDER

established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state." *Id.*

The Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment protects individuals from arbitrary government action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Courts have recognized certain fundamental rights as implied within the concept of Fourteenth Amendment due process. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Among these are the right to bodily autonomy, including the right to be free from physical injury, bodily restraint, and bodily intrusions. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *Wood v. Ostrander*, 879 F.2d 583, 586, 589 (9th Cir. 1989).

In a Section 1983 claim against an individual acting under the color of state law, "the general rule is that [a] state is not liable for its omissions." *Patel v. Kent School District*, 648 F.3d 965, 971 (9th Cir. 2011). "[T]he Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests." *Id.* Thus, the Fourteenth Amendment generally "does not impose a duty on [the state] to protect individuals from third parties.'" *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir.2007). There are two exceptions to this rule: First, for failing to protect the plaintiff when there is a "special relationship" between them; and second, if the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012); *Patel*, 648 F.3d at 971-72. Where this "state created danger" exception applies, the affirmative act must create an actual, particularized, danger. *Kennedy*, 439 F.3d at 1061.

5 – OPINION AND ORDER

Here, the actions of Brown do not satisfy either prong. With respect to a special relationship, Chief Brown had only met SLS one time at a department summer barbecue. Nonetheless, Plaintiff appears to be arguing that Chief Brown, by virtue of his position atop the police department, had a special relationship with SLS for the same reasons that Plaintiff contends that Myrtle Creek, as a city, did. The argument is that Myrtle creek relied on Salterio's status as a foster parent in hiring him, and that Myrtle Creek helped Salterio maintain his foster certification and guardianship of SLS, because Salterio's employment with the department lent credibility to the guardianship assessment. Plaintiff further alleges that that Myrtle Creek created a special relationship with SLS because Salterio was able to use the "trust and confidence granted to him by Myrtle Creek Police Department" to sexually exploit children. Here, Plaintiff cites to the fact that Salterio told SLS he could get away with the abuse because he is a police officer. TAC at 16. Plaintiff also contends that Salterio's use of the department's internet and computers to sexually exploit children also gave rise to a special relationship. *Id.*

None of these facts point to the kind of special relationship that provides for an exception to the general rule of nonliability for omissions. The special-relationship exception is traditionally applied when a state "takes a person into its custody and holds him there against his will," in situations such as "incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). The constitutional duty under this exception arises "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom." *Id.* That is, the "substantive due process rights are triggered when the state restrains his liberty, not when he suffers harm caused by the actions of third parties." *Patel*, 648 F.3d at 972. In *DeShaney*, a county department was made aware of

the brutal abuse of a four-year-old by the child's father, with copious evidence of abuse occurring through multiple sources. 489 U.S. 189 at 192. The boy was ultimately beaten to near-death by his father and suffered severe brain damage. *Id.* Never did the county intercede, yet the Supreme Court rejected the boy's § 1983 due process claim, holding the special-relationship exception did not apply because the boy was in the custody of his father, not the state. *Id.* at 201.

Here, there are no facts establishing the type of custodial relationship between Chief Brown and SLS that would give rise to the special relationship exception. As stated above, Plaintiff offers a litany of facts attempting to assign culpability to Chief Brown, but the reality remains that SLS was in the legal custody of one of his employees and Chief Brown had met SLS in passing just once. There was no special relationship.

Next, Plaintiff argues that Chief Brown created a danger by failing to "cross report" and otherwise take action on February 6, 2019, when Special Agent Persons notified him that DOJ was prepared to arrest Salterio. Here, Chief Brown was explicitly told not to share this information in order to facilitate the investigatory measures of the of the ICAC unit. And indeed, less than two days later, Salterio was arrested. Such an omission—if it could be characterized as that—is not the sort of affirmative conduct that gives rise to a state-created danger. And it does not represent deliberate indifference to the danger at stake. In fact, quite the opposite: Chief Brown was complying with the dictates of the ICAC unit to ensure that law enforcement was swift and effective. Numerous courts, when examining state-created danger as it relates to protection of children, have found that state is not liable in instances where there is far greater danger than we have here. *See, e.g., Pierce v. Delta County Department of Social Services*, 119 F.Supp.2d 1139 (D. Co. 2000) (finding that failure to comply with mandatory reporting and investigation provisions did not give rise to a state-created danger); *Estate of Pond v. Oregon*,

322 F.Supp.2d 1161 (D. Or. 2004) (holding that the state's failure to protect a child does not trigger the danger-creation exception, unless affirmative steps were taken to increase the danger); *Forrester v. Bass*, 397 F.3d 1047 (8th Cir. 2005) (concluding that that the failure to investigate a report of child abuse, as required by law, and failing to remove a child from an abusive family situation, does not constitute state created danger). Because Chief Brown's actions did not constitute affirmative conduct to place SLS in danger or a deliberate indifference to that danger, the Court finds that Chief Brown's motion prevails as a matter of law.

II. **Qualified Immunity**

Defendant's motion also prevails on grounds of qualified immunity. Government officials are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *White* v. *Pauly*, 580 U. S. 73, 78–79 (2017)). For a court to deem a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here there was not a clearly established right that Chief Brown would have known at the time of the alleged violation. Plaintiff argues not that legal precedent has clearly established the right at issue, but that the established right exists because Oregon law "provides the basis for the cause of action sued upon." Opp'n to Mot. at 26 (*citing Davis v. Scherer*, 468 U.S. 183, 194 n.12, (1984)). Specifically, the argument is that Oregon's mandatory reporting law created a liberty interest for SLS to be "free from exposure to the risk of sexual abuse after Persons had reasonable cause to believe Salterio was sexually exploiting children." *Id.* at 32. This reasoning, however, draws a tenuous connection to a clearly established right, even if the Court were to find

that Brown violated his duty as a mandatory reporter. The Supreme Court binds this Court to a high standard on qualified immunity. It exists to allow officers wide latitude in conducting their duties. It is a "demanding standard [that] reflects the long-standing principle that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Est. of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir. 2024). The Court finds, as a matter of law, that Chief Brown's conduct did not violate a clearly established right and that his conduct is therefore protected under qualified immunity.

## **CONCLUSION**

Defendant, Donald Brown's Motion for Summary Judgment, ECF No. 101, is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of August, 2024.

                                                    /s/ Michael J. McShane
                                                          Michael McShane
                                                     United States District Judge

III.